## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| Yesenia Valiente, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Class Action Complaint |
| - against - | Jury Trial Demanded |
| Unilever United States, Inc., | |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Unilever United States, Inc. ("Defendant") sells antiperspirant deodorant with added moisturizers containing natural oil under the Dove Advanced Care brand ("Product").



2.　　The label statements include "¼ moisturizers with natural oil," "go fresh," a picture of a fruit or vegetable with seeds, and identification of the active ingredient, "Aluminum Zirconium Tetrachlorohydrex GLY."

## I.　NATURAL CLAIMS ARE IMPORTANT TO CONSUMERS

3.　　Sales of cosmetics based on natural ingredients are growing twice the rate of traditional cosmetics and exceed $50 billion per year.

4.　　Consumers understand front label cosmetic claims of natural ingredients to mean the entire product does not contain synthetic ingredients and/or all the ingredients of the type identified in the product are natural.

5.　　According to Nielsen, whether a cosmetic product contains natural instead of synthetic ingredients is very important to almost fifty percent of the public.

6.　　A recent academic publication concluded that consumers would pay at least ten percent more for cosmetics with claims highlighting the presence of natural ingredients.

7.　　There are several reasons why consumers prefer cosmetics with natural, instead of synthetic ingredients.

8.　　First, over three-quarters of U.S. adults believe cosmetics with synthetic ingredients are associated with detrimental impacts on health and the environment.

9.　　This is because such ingredients are highly processed with chemical additives and solvents, which can cause irritation, allergic reactions, and other harmful effects.

10.　　Second, one scholar posited "the preference for natural products appeals to a moral ideology and offers a moral satisfaction."

## II.　NATURAL OIL CLAIM IS MISLEADING

11.　　Consumers interpret cosmetic claims and descriptions using the word "natural"

broadly.

12.    The Product's statement of "¼ moisturizers with natural oil" is understood by consumers to mean the absence of any synthetic and/or synthetically derived ingredients.

13.    The Product's statement of "¼ moisturizers with natural oil" is understood by consumers to mean all the oil ingredients are not synthetic, not produced through chemical synthesis or by using chemical compounds, even if these any synthetic ingredients are purportedly absent from the final ingredient.

A.    Small Amount of Oil Ingredients

14.    Despite the front label emphasis on "natural" oil, the two oils, "Hydrogenated Castor Oil" and "Helianthus Annuus (Sunflower) Seed Oil," are the sixth and twelfth ingredients in order of predominance by weight.

**Active ingredient**
**Purpose**
Aluminum Zirconium Tetrachlorohydrex GLY (15.2%)
…            antiperspirant
**Inactive ingredients**
Stearyl Alcohol, C12-15 Alkyl Benzoate, Cyclopentasiloxane, Isopropyl Palmitate, PPG-14 Butyl Ether, Hydrogenated Castor Oil, PEG-8, Fragrance (Parfum), Dimethicone, Silica, Polyethylene, Helianthus Annuus (Sunflower) Seed Oil, Steareth-100, BHT.

15.    The amount of "natural" and synthetic oils in the Product is *de minimis*, relative to the most predominant ingredients of "Stearyl Alcohol [and] C12-15 Alkyl Benzoate."

3

B.  Oils are Not Natural

16.    Despite the promise of "natural oil," the most predominant oil in the Product is "Hydrogenated Castor Oil," a synthetic ingredient.

17.    Hydrogenated castor oil consists of synthetic polyethylene glycol and castor oil.

18.    This is produced through ethoxylation, a chemical reaction in which ethylene oxide is added to the substrate of castor oil.

19.    Hydrogenated castor oil is added not for moisturizing but because it is a surfactant, which lowers the surface tension between two substances.

20.    It is misleading to promote the Product with the claim of "natural oil" when its most predominant oil, hydrogenated castor oil, is a synthetic ingredient.

21.    While "Helianthus Annuus (Sunflower) Seed Oil," produced from sunflower seeds, may appear to be more "natural" than hydrogenated castor oil, it is made using chemical reactions and industrial petrochemicals.

22.    To obtain oil from sunflower seeds involves seed preparation, mechanical extraction, and solvent extraction from the ground oilcakes or expanded material known as "collets."

23.    The solvent used to extract the oil is n-hexane.

24.    N-hexane is an industrial chemical obtained from petroleum through fractional distillation.

25.    N-hexane contains structural isomers and chemicals, such as methyl pentane and methyl cyclopentane, which are synthetic compounds.

26.    N-hexane is recognized by public health authorities as a common skin irritant, which can cause redness, blistering and superficial burns.

27.    Medical authorities advise that anyone who may have come into contact with n-hexane should immediately seek medical advice.

28.     Disposal of n-hexane causes environmental damage to the air and water sources.

29.     It is misleading to promote the Product as made with "natural oil" because even though sunflower seeds are a natural source, obtaining sunflower seed oil requires the ingredient to undergo a manufacturing process replete with chemical reactions and the use of n-hexane, an industrial petrochemical solvent.

30.     Reasonable consumers do not expect sunflower seed oil, promoted as a "natural oil," to be made using synthetic compounds and undergo industrial manufacturing.

31.     Since consumers prefer natural ingredients in products due to their beneficial health and environmental effects over synthetic ingredients, it is misleading to highlight a "natural oil" made using a synthetic chemical solvent, which in fact has detrimental health and environmental effects.

32.     Defendant makes other representations and omissions with respect to the Product which are false and misleading.

33.     Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

34.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

35.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

36.     Had Plaintiff known the truth, she would not have bought the Product or would have paid less for it.

37.     As a result of the false and misleading representations, the Product is sold at a

premium price, approximately no less than $5.99 per 2.6 oz, excluding tax and sales, higher than

similar products, represented in a non-misleading way, and higher than it would be sold for absent

the misleading representations and omissions.

## Jurisdiction and Venue

38.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28

U.S.C. § 1332(d)(2).

39.     The aggregate amount in controversy exceeds $5 million, including any statutory

damages, exclusive of interest and costs.

40.     Plaintiff Yesenia Valiente is a citizen of Florida.

41.     Defendant Unilever United States, Inc. is a Delaware corporation with a principal

place of business in Sylvan, Bergen County, New Jersey.

42.     The class of persons Plaintiff seeks to represent includes persons who are citizens of

different states from which Defendant is a citizen

43.     The members of the class Plaintiff seeks to represent are more than 100 because the

Product has been sold with the representations described here, in thousands of locations, in the

states covered by Plaintiff's proposed classes.

44.     Venue in this District is proper because a substantial part of the events or omissions

giving rise to these claims occurred in Miami-Dade County, including Plaintiff's purchase,

consumption, transactions and/or use of the Product and awareness and/or experiences of and with

the issues described here.

## Parties

45.     Plaintiff, Yesenia Valiente, is a citizen of Miami-Dade County, Florida.

46.     Defendant, Unilever United States, Inc., is a Delaware corporation with a principal

place of business in Sylvan, New Jersey, Bergen County.

47.    Defendant is the world's largest consumer packaged goods company, which owns hundreds of iconic brands, from Ben and Jerry's Ice Cream to Axe Body Spray to Dove cosmetic and personal care products.

48.    The Product is available to consumers from third party vendors, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and/or online, and from Defendant's website.

49.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged herein, at stores including Costco, 7795 W Flagler St #01, Miami, FL 33144, between January 2022 and May 2022, and/or among other times.

50.    Plaintiff believed and expected the Product to contain only natural oil ingredients, that the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients because that is what the representations and omissions said and implied on the front label and in the absence of any reference or statement elsewhere on the Product.

51.    Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

52.    Plaintiff bought the Product at or exceeding the above-referenced price.

53.    Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

54.    Plaintiff chose between Defendant's Product and products represented similarly, but

which did not misrepresent their attributes, requirements, instructions, features, and/or components.

55.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

56.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

57.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar antiperspirant deodorants made with natural oil ingredients, because she is unsure whether those representations are truthful.

Class Allegations

58.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Mississippi, Tennessee, Arkansas, South Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

59.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

60.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

61.     Plaintiff is an adequate representative because her interests do not conflict with other members.

62.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

63.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

64.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

65.     Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida Deceptive and Unfair Trade Practices Act
("FDUTPA"), Fla. Stat. § 501.201 et seq.
(Consumer Protection Statute)

66.     Plaintiff incorporates by reference all preceding paragraphs.

67.     Plaintiff believed the Product contained only natural oil ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients.

68.     Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

69.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

70.     Plaintiff relied on the representations and omissions to believe the Product contained only natural oil ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients.

71.      Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(On Behalf of the Consumer Fraud Multi-State Class)

72.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or

deceptive business practices in the conduct of commerce.

73.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent

and/or the consumer protection statute invoked by Plaintiff.

74.     Defendant intended that members of the Consumer Fraud Multi-State Class would

rely upon its deceptive conduct.

75.     As a result of Defendant's use of artifice, and unfair or deceptive acts or business

practices, the members of the Consumer Fraud Multi-State Class sustained damages.

76.     Defendant's conduct showed motive and a reckless disregard of the truth such that

an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

77.     The Product was manufactured, identified, marketed and sold by Defendant and

expressly and impliedly warranted to Plaintiff that it contained only natural oil ingredients, the

highlighted ingredients were natural, and that it contained a non-de minimis amount of the

highlighted ingredients.

78.     Defendant directly marketed the Product to Plaintiff through its advertisements and

marketing, through various forms of media, on the packaging, in print circulars, direct mail,

product descriptions distributed to resellers, and targeted digital advertising.

79.     Defendant knew the product attributes that potential customers like Plaintiff were

seeking and developed its marketing and labeling to directly meet those needs and desires.

80.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained only natural oil ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients.

81.    Defendant's representations affirmed and promised that the Product contained only natural oil ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients.

82.    Defendant described the Product so Plaintiff believed it contained only natural oil ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

83.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

84.    This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high-quality products.

85.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

86.    Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

87.    Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

88.    Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices,

and by consumers through online forums.

89.     The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

90.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained only natural oil ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients.

91.     The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained only natural oil ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

92.     Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

93.     Defendant had a duty to truthfully represent the Product, which it breached.

94.     This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

95.     Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

96.     These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

97.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

98.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

99.     Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

100.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural oil ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients.

101.    Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

102.    Defendant knew of the issues described here yet did not address them.

103.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

104.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   May 16, 2022

Respectfully submitted,

/s/Alexander J. Korolinsky

Alexander J. Korolinsky
Florida Bar No.: 119327
AJK Legal
1001 Brickell Bay Dr Ste 2700
Miami FL 33401
Tel: (877) 448-8404
korolinsky@ajklegal.com

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021

Tel: (516) 268-7080
spencer@spencersheehan.com
*Pro Hac Vice Application Forthcoming